IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:10-CV-470-H

JAMES BURK and SHANNON BURK, )
Guardians Ad Litem for A.B., )
JAMES BURK, Individually, and )
SHANNON BURK, Individually, )
                                   )
    Plaintiffs,               )
                                   )        **ORDER**
    v.                               )
                                   )
UNITED STATES OF AMERICA, )
    Defendant.             )

This matter is before the court on plaintiffs' motion for partial summary judgment. Defendant filed a Notice informing the court it will not file a response to plaintiffs' motion. This matter is ripe for adjudication.

### BACKGROUND

Plaintiffs filed this action pursuant to the Federal Tort Claims Act (FTCA) alleging that during the delivery of A.B., defendant breached the applicable standard of care thereby proximately causing A.B. to suffer extensive brain damage resulting in cerebral palsy.

A.B. was one of a set of twins delivered at Womack Army Medical Center in Fort Bragg, North Carolina. The doctors present and handling the delivery were a second year resident, Dr. Christina Lewis and the attending physician, Dr. Jon Marshall. It was admitted in the Answer that Dr. Lewis and Dr. Marshall were medical providers whose care was covered by the FTCA.

The memorandum in support of summary judgment details the facts surrounding A.B.'s delivery. Following the delivery of A.B.'s twin brother without complication, A.B. developed a prolapsed umbilical cord at 14:43. A prolapsed umbilical cord is considered an obstetrical emergency that requires immediate delivery of the child. At the request of Dr. Lewis, Dr. Marshall examined the patient. He made the decision to "reduce" the cord, or attempt to push the cord back into the birth canal, and to continue with the vaginal delivery. At 14:46, the fetal heart monitor strip showed that A.B. began having severe heart rate decelerations, causing lack of blood and oxygen to reach her through the umbilical cord. These decelerations continued for the next 50 minutes until A.B. was delivered at 15:36. Despite Dr. Lewis again noting to Dr. Marshall that she thought the cord was prolapsed, as well as another physician recommending immediate delivery, Dr. Marshall decided to use

2

forceps to deliver the baby, rather than perform a C-section. According to Dr. Lewis' testimony, it took in excess of ten minutes to locate the forceps, as they were not present in the delivery room.

At the time of delivery, A.B. was severely depressed, having been in terminal bradycardia and had a Cord PH of 6.61, which is indicative of severe hypoxia during the birth process. At birth, she was immediately airlifted to Duke Medical Center. She was diagnosed with birth asphyxia and hypoxic-ischemic encephalopathy, which is brain damage from a lack of blood and oxygen during the birth process. A.B. has been diagnosed with cerebral palsy and requires 24-hour per day medical care.

## COURT'S DISCUSSION

I.  Standard of Review

Summary judgment is appropriate pursuant to Rule 56 of the Federal Rules of Civil Procedure when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

3

Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Summary judgment is not a vehicle for the court to resolve disputed factual issues. Faircloth v. United States, 837 F. Supp. 123, 125 (E.D.N.C. 1993). Instead, a trial court reviewing a claim at the summary judgment stage should determine whether a genuine issue exists for trial. Anderson, 477 U.S. at 249.

In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson, 477 U.S. at 247-48. The evidence must also be such that a reasonable jury could return a verdict for the non-moving party. Id. at 248. Accordingly, the court must examine "both the materiality and the genuineness of the alleged fact issues" in ruling on this motion. Faircloth, 837 F. Supp. at 125.

4

## II. Analysis

In an action under the Federal Tort Claims Act, although the court follows federal law for the procedural aspects of the case, state law (here North Carolina law) governs the substantive aspects of the case. In a medical malpractice action under North Carolina law, the plaintiff must show: (1) the applicable standard of care under N.C. Gen. Stat. 90-21.12; (2) a breach of the standard of care; (3) proximate causation; and (4) damages. Weatherford v. Glassman, 129 N.C. App. 618, 621-22 (1989). Because questions regarding the standard of care for health care professionals ordinarily require specialized knowledge, parties "must establish the relevant standard of care through expert testimony." Smith v. Whitmer, 159 N.C. App. 192, 195 (2003).

Plaintiffs have identified two expert obstetrician-gynecologists ("Ob-Gyn") who aver that the defendant failed to meet the applicable standard of care in the delivery of A.B. and that the failure of the defendant to properly deliver A.B. was a proximate cause of the injuries suffered by A.B. Dr. Mark Landon is the head of Obstetrics and Gynecology at the Ohio State University School of Medicine and concentrates his practice in high-risk obstetrics, including twin deliveries like the one at issue in the instant matter. Dr. Wesley Hambright is

5

an Ob-Gyn who practices in Jacksonville, North Carolina, a military medical community similar to the one in Fort Bragg where the events in the instant case occurred. Dr. Hambright also has experience with twin deliveries. The government did not designate any experts who are qualified to testify to the standard of care in this matter.

The court has carefully reviewed this matter, including the affidavits of Dr. Landon and Dr. Hambright. The court finds that plaintiffs have established the applicable standard of care, a breach of that standard of care by the defendant, and proximate causation. Dr. Landon and Dr. Hambright are qualified to give expert testimony in this matter. The standard of care in this case required the defendant to immediately proceed with the delivery of A.B. once the prolapsed cord was diagnosed at 14:43, requiring that A.B. be delivered no later than 30 minutes from the time of the diagnosis of the prolapsed cord. However, A.B. was not delivered until 56 minutes after the diagnosis of the prolapsed cord. Furthermore, the affidavits show that failure to deliver A.B. in a timely manner was a proximate cause of the brain damage and cerebral palsy suffered by A.B. Defendant has not rebutted this evidence in any way.

Therefore, plaintiffs' motion for summary judgment is GRANTED and the court finds that defendant breached the applicable standard of care and that defendant's breach was a proximate cause of plaintiffs' injuries. Remaining before this court is the issue of damages.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment on the issue of liability is GRANTED as detailed above. Remaining before this court for trial is the issue of damages only. The government has filed a motion to continue the trial. For good cause shown, the trial on damages in this matter is continued to this court's August 20, 2012, civil term.

Additionally, pursuant to Local Civil Rule 101.2, EDNC, and Rules 16 and 53 of the Federal Rules of Civil Procedure, the court ORDERS a court-hosted settlement conference. United States Magistrate Judge David W. Daniel is hereby appointed as settlement master. Magistrate Judge Daniel is directed to meet with the parties and supervise negotiations, with an aim toward reaching an amicable resolution of the issues. Magistrate Judge Daniel is given full authority to establish such rules as he may desire, which shall be binding upon the parties and their counsel during the course of the conference. The conference

will be conducted at a time and place selected by Magistrate Judge Daniel upon notice to the parties.

This 9th day of ~~March~~ April 2012.

*[signature]*
Malcolm J. Howard
Senior United States District Judge

At Greenville, NC
#26